**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 09 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10356 |
| Plaintiff-Appellee, | D.C. No. 2:11-cr-00429-JAM-7 |
| v. | |
| WILLIAM HUGH WEYGANDT, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted February 16, 2017
San Francisco, California

Before: W. FLETCHER, FUENTES,[**] and RAWLINSON, Circuit Judges.

Defendant William Weygandt appeals from the jury's verdict finding him

guilty of conspiracy to commit fraud involving aircraft parts in violation of 18

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

U.S.C. § 38(a) and from the district court's denial of his motion for a judgment of acquittal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## 1. Sufficiency of the Evidence

Weygandt argues that the government failed to present sufficient evidence to prove Weygandt's knowledge of the conspiracy to commit fraud and his intent to defraud. We review *de novo* challenges to the sufficiency of the evidence supporting a conviction. *United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010). We "view[] the evidence produced at trial in the light most favorable to the prosecution" and consider whether the evidence "is sufficient to allow any rational juror to conclude that the government has carried its burden of proof." *United States v. Nevils*, 598 F.3d 1158, 1169 (9th Cir. 2010) (en banc).

A rational juror could find beyond a reasonable doubt that Weygandt knew of and participated in the conspiracy to commit fraud with intent to defraud. In the light most favorable to the government, the evidence shows that Weygandt was a hands-on manager who frequently participated in production meetings and was knowledgeable about the technical aspects of the business. Various employees testified that they notified Weygandt of their need for different equipment but never received the machinery they requested. In addition, the government elicited testimony that only Weygandt was authorized to make major purchases. Based on

2

this and other evidence, a jury could rationally conclude that Weygandt knew WECO's equipment was inadequate to comply with the component maintenance manuals ("CMMs") and his employees were falsely certifying 8130-3s, and that he intended to further the conspiracy by failing to acquire equipment and deflecting his employees' requests.

## 2. Trial Errors

In addition to his sufficiency of the evidence challenge, Weygandt raises a variety of alleged trial errors. First, Weygandt argues that the jury instruction defining "accountable manager" was improper because it permitted the jury to convict on a theory of vicarious liability. We review *de novo* whether jury instructions "misstated or omitted an element of the charged offense" but review for abuse of discretion "the district court's formulation of jury instructions." *United States v. Chi Mak*, 683 F.3d 1126, 1133 (9th Cir. 2012). Here, the jury was properly instructed regarding the elements of conspiracy to commit fraud involving aircraft parts, including the need to find knowledge and intent beyond a reasonable doubt. The accountable manager instruction did not misstate any element of the charged offense, and the formulation was not an abuse of discretion.

Second, Weygandt argues that the prosecution effected a constructive amendment or fatal variance by advancing a theory of inaction at trial. When a

defendant fails to object to such an error at trial, we review for plain error. *United States v. Hugs*, 384 F.3d 762, 766 (9th Cir. 2004). Under the plain error standard, "we may reverse a conviction if there exists (1) an error, (2) that is plain and (3) that affects substantial rights." *Id.* at 767 (internal quotation marks and alterations omitted). When these elements are present, we may correct an error "if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* (internal quotation marks omitted).

There was no constructive amendment or fatal variance. An impermissible amendment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed on them," and a variance occurs when "the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002) (internal quotation marks omitted). The evidence offered at Weygandt's trial was consistent with the indictment. The indictment charged that Weygandt "directed and caused" his employees to complete repairs, sign 8130-3s, and return parts to customers "with knowledge" that the repairs had not been conducted in accordance with the CMMs. At trial, the government presented evidence from which a rational jury could infer that Weygandt directed his employees to continue completing repairs "with

4

knowledge" that the repairs were not being conducted in compliance with the CMMs.

Third, Weygandt argues that the government improperly misstated evidence during closing argument. Because Weygandt did not object at trial, we review for plain error. *United States v. Weatherspoon*, 410 F.3d 1142, 1150-51 (9th Cir. 2005). Weygandt is likely correct that the government misused Government Exhibit 504, a memorandum from Weygandt to Honeywell, in closing argument by advancing its own interpretation of the memorandum and presenting this interpretation as fact. *See United States v. Kojayan*, 8 F.3d 1315, 1321 (9th Cir. 1993) (explaining that it is improper for a prosecutor to make "unsupported factual claims" because "[w]hen a lawyer asserts that something not in the record is true, he is, in effect, testifying"). However, these statements were not sufficiently prejudicial to warrant reversal under plain error review. The improper statements were limited to two assertions about the meaning of certain language from a memorandum that had been properly admitted into evidence. Thus, the jury had the opportunity to independently examine the document during deliberations and to assess the plausibility of the government's interpretation.

Fourth, Weygandt argues that the government's references to Weygandt's wealth denied him due process. Because Weygandt did not raise this objection at

5

trial, we review for plain error. *United States v. Reyes*, 660 F.3d 454, 461 (9th Cir. 2011). The government may not introduce evidence simply to show that a defendant is wealthy or poor, because financial condition alone has little probative value and risks unfair prejudice. *Id.* at 464. However, such evidence may be admissible if it proves motive, knowledge, or intent. *Id.* At Weygandt's trial, the government introduced evidence of Weygandt's salary and the purchase price of WECO and made various references to Weygandt's wealth and greed. According to the government, this evidence was introduced to show that Weygandt could have purchased the necessary equipment but decided not to in order to increase his personal earnings. In light of the government's potentially valid uses for the wealth-related evidence, any error here was not "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993) (internal quotation marks omitted).

Fifth, Weygandt argues that the government engaged in a pattern of misconduct warranting dismissal or a new trial. He alleges that the government committed discovery violations, rendered defense witnesses unavailable, and knowingly elicited false testimony. "We review the district court's rulings on alleged prosecutorial misconduct for an abuse of discretion." *Reyes*, 660 F.3d at 461. Here, the district court explicitly stated that it had observed no prosecutorial misconduct over the course of the trial. With regard to the alleged discovery

6

violations, the district court took remedial steps where necessary and noted on the record that it did not believe the government's late disclosures were the result of misconduct. There is no reason for dismissal on this basis.

Weygandt's allegation that the government purposefully prevented witnesses from testifying for the defense is similarly unconvincing. The district court properly denied Weygandt's motion to compel immunity for a potential defense witness, because there was nothing in the record indicating that the government "took affirmative steps to prevent [the witness] from testifying." *See United States v. Whitehead*, 200 F.3d 634, 640 (9th Cir. 2000) (explaining that in order to compel immunity, the defendant must show that the government "distorted the judicial fact-finding process" and "took affirmative steps to prevent" witnesses from testifying (internal quotation marks omitted)).

In his final claim of prosecutorial misconduct, Weygandt alleges that the government elicited false testimony from Anthony Zito. This allegation is not supported by the record. Zito testified that he told Weygandt that Odom's Aircraft was "doing the same thing" as WECO–that is, continuing repairs without the proper equipment. The government had earlier interviewed the owner of Odom's Aircraft, who stated that Odom had never had problems with the Federal Aviation Administration. While these statements undercut Zito's credibility and were valid

impeachment evidence, they were not proof that Zito was lying. To avoid any prejudice, the district court permitted the defense to call the agent who had interviewed the owner to testify. The district court did not abuse its discretion in declining to dismiss the indictment based on these allegations of prosecutorial misconduct.

Sixth, Weygandt argues that the government's use of guilt-assuming hypotheticals was improper. The government may not ask character witnesses hypothetical questions that "assume the defendant's guilt of the precise acts for which he is on trial." *United States v. Shwayder*, 312 F.3d 1109, 1120 (9th Cir. 2002). When a defendant fails to object to such questions at trial, we review for plain error. *Id.* Here, the government concedes that the prosecutor asked one series of guilt-assuming hypotheticals but contends that the error was harmless. We agree. A single series of improper questions, asked to only one of various character witnesses, is unlikely to have any meaningful effect on the verdict. The other questions identified by Weygandt are not guilt-assuming hypotheticals. They ask about specific instances of the defendant's misconduct and are permissible under Federal Rule of Evidence 405(a).

Seventh, Weygandt argues that the district court erred in limiting the testimony from Weygandt's character witnesses. We review evidentiary rulings

8

for abuse of discretion. *United States v. Hankey*, 203 F.3d 1160, 1166-67 (9th Cir. 2000). A criminal defendant may present evidence of his own character in the form of opinion testimony or reputation testimony. Fed. R. Evid. 404(a)(2)(A), 405(a). However, specific instances of conduct are admissible only when the character trait is "an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). Weygandt does not attempt to argue that character is an essential element of any charge, claim, or defense involved in this case, and his reliance on *United States v. Whitman*, 771 F.2d 1348 (9th Cir. 1985), is misplaced. Nothing in *Whitman* exempts the defense from complying with the Federal Rules of Evidence.

Finally, Weygandt argues that cumulative error justifies reversal. Because only the government's use of Exhibit 504 and its use of a series of guilt-assuming hypotheticals were improper, the errors here did not produce significant prejudice.

**AFFIRMED.**



FILED

MAR 09 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*U.S. v. Weygandt*, Case No. 14-10356
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.